IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PAUL YOUNES, LINDA YOUNES, and MARGARITA YOUNES-HOLZ,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 8:26-cv-00310<br><br>**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S PETITION FOR SUMMARY ENFORCEMENT OF CIVIL INVESTIGATIVE DEMANDS 25-689, 25-690, AND 25-691** |

COMES NOW, Defendants, Paul Younes, Linda Younes, and Margarita Younes-Holz (collectively, the "Younes"), and respectfully submit the following Brief in Opposition to the United States of America's (hereinafter, the "United States") Petition for Summary Enforcement of Civil Investigative Demand ("CID") Nos. 25-689, 25-690, and 25-691 (the "Petition") in response to the Petition and in support of the Younes' Motion to Dismiss.

## I. <u>INTRODUCTION</u>

This is a matter concerning well-intentioned community members being subjected to an unreasonable and burdensome investigation by the United States. Since 2024, the United States has been investigating the Younes' 2020 applications for Paycheck Protection Program ("PPP") loans for their family-operated hotels and hospitality businesses, including the businesses' eligibility for those loans, through multiple CIDs under the False Claims Act ("FCA"). (*See* Filing No. 1).

The Younes have demonstrated a consistent willingness to cooperate fully and transparently with the United States' investigation by producing extensive documents, submitting sworn written responses, and offering voluntary interviews in response to CID Nos. 24-121, 24-

122, 24-123, 25-689, 25-690, and 25-691. During the investigation, the Younes notified the United States of their intent to assert the advice of counsel defense. The United States then gathered additional extensive information from the Younes, the Younes' attorneys, Luke Simpson ("Mr. Simpson") and Paul Forney ("Mr. Forney"), and the Younes' accountant, Mindy Oman ("Ms. Oman"), regarding such defense. Despite the focus of the investigation narrowing to the advice of counsel defense, the United States continues to insist the Younes should appear for in-person depositions for all of the topics listed in CID Nos. 25-689, 25-690, and 25-691.

The United States may obtain a CID to assess whether grounds exist to state a claim under the FCA, but the scope and enforcement of a CID is not unlimited. First, a CID may not seek oral testimony that is otherwise protected by the standards for discovery requests under the Federal Rules of Civil Procedure. *See* 31 U.S.C. § 3733(b)(1). In this case, the United States is aware of a valid advice of counsel defense that has been substantiated through extensive documentation and sworn testimony. Further sworn testimony from the Younes, outside the scope of the advice of counsel defense, is irrelevant, unreasonably duplicative, and not proportional to the needs of the case based on the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(2)(C). Secondly, a court cannot enforce a CID when doing so would be an abuse of the Court's process. *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 819 (8th Cir. 2012). The United States has repeatedly demonstrated a pattern of failing to approach this investigation in good faith. The circumstances of this investigation demonstrate a fishing expedition by the United States for information that the United States already has – costing the Younes' unnecessary expense and undue burden. Accordingly, enforcement of CID Nos. 25-689, 25-690, and 25-691would amount to an abuse of the Court's process. Therefore, there is good cause for the Court to deny the Petition, refuse to enforce CID Nos. 25-689, 25-690, and 25-691, and quash such subpoenas.

## II. FACTUAL BACKGROUND

### A. The Younes' Applications for PPP Loans.

Paul Younes and his wife, Linda Younes, are established residents and community members in Kearney, Nebraska. Margarita ("Maggie") Younes-Holz is the daughter of Paul and Linda Younes. The Younes own and operate the following businesses in the hospitality industry: Younes Hospitality Inc., Fremont Hotels Inc., GI Hospitality Inc., GICS Hospitality Inc., Hastings Hospitality Inc., HIC Express Inc., KCS Hospitality Inc., Kearney Hospitality Inc., Kearney Investment Corporation, Mid Plains Hospitality Inc., NMN Express Inc., Norfolk Hospitality Inc., Talmadge Properties Inc., WIN Investments Inc., Paul Younes Sole Proprietorship, and Younes Conference Center LLC (collectively, the "Younes Businesses"). (Affidavit of Michael B. Duffy ("Duffy Aff."), Exhibits D-1, D-2, and D-3). The Younes Businesses employ hundreds of individuals across rural Nebraska. (Duffy Aff., Exhibit T).

In 2020, the impact of the Covid-19 pandemic struck and halted the hospitality industry. (Duffy Aff., Exhibit T, pg. 2). As a locally owned and family-operated network of small businesses, the Younes Businesses faced the prospect of having to lay off employees amidst the pandemic's impact on the hospitality industry. (Duffy Aff., Exhibit T, pg. 2).

The Younes became aware of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act signed into law on March 27, 2020, which offered businesses, like the Younes Businesses, relief through Paycheck Protection Program ("PPP") loans. (Duffy Aff., Exhibit T, pg. 2). To preserve the jobs of the Younes Businesses' employees, the Younes decided to apply for the PPP loans to support the payroll of the Younes Businesses. (Duffy Aff., Exhibit T, pg. 2).

Prior to submitting the PPP loan applications, the Younes assessed the Younes Businesses' eligibility for PPP funds with the advice and assistance from their accounting and legal professionals, Ms. Oman and attorneys Mr. Simpson and Mr. Forney. (Duffy Aff., Exhibit T, pg. 2). Subsequently, the Younes, with the previously mentioned assistance, completed and submitted the PPP loan applications for the Younes Businesses. (Duffy Aff., Exhibit T, pg. 2).

**B. The United States' Investigation.**

On February 14, 2024, the United States issued CID Nos. 24-121, 24-122, and 24-123 on Paul Younes, Linda Younes, and Younes Hospitality, Inc. (Duffy Aff., Exhibits A, B, and C). CID Nos. 24-121, 24-122, and 24-123 included the United States' Interrogatories and Requests for Production of Documents related to the Younes Businesses' PPP loan applications from 2020, the ownership structure of the Younes Businesses, and the employees at the Younes Businesses. (*See* Duffy Aff., Exhibits A, B, and C).

Under the representation of Mr. Forney, the Younes provided sworn written responses and documents to the United States in response to CID Nos. 24-121, 24-122, and 24-123. (*See* Duffy Aff., Exhibits D-1, D-2, and D-3, and E). This production included hundreds of pages of documents. (*See* Duffy Aff., Exhibits D-1, D-2, and D-3, and E). Additionally, the United States received two (2) exhibit boxes containing various documents and a USAFx file share with email attachments. (*See* Duffy Aff., Exhibit I, p. 2). Taken together, the Younes' production included loan documents, banking records, checks, and financial records for the Younes Businesses. (*See* Duffy Aff., Exhibits D-1, D-2, and D-3, and E).

Subsequently, the Younes retained the undersigned as new legal counsel to assist with the investigation by the United States and notification of the Younes' new representation was sent to

the United States on June 17, 2025. (Duffy Aff., ¶ 9). Shortly thereafter, on July 8, 2025, the United States served CID Nos. 25-689, 25-690, and 25-691 demanding the Younes to individually provide oral testimony under oath on the following topics:

(1) the current and past ownership and operation of the Younes Businesses;

(2) Paul Younes's guilty plea to a misdemeanor and probationary status;

(3) the Younes Businesses applications for PPP loans and related process; and

(4) the eligibility of the Younes Businesses for PPP loans and forgiveness.

(Duffy Aff., Exhibits W, X, and Y). Furthermore, CID Nos. 25-689, 25-690, and 25-691 all stated that the purpose of the CID was "to discover [their] knowledge concerning Younes Hospitality Inc. and related entities … and their eligibility for PPP loans and forgiveness." (Duffy Aff., Exhibits W, X, and Y).

On July 14, 2025, the undersigned, on behalf of the Younes, requested a meeting with the United States to discuss the status of the investigation, including a presentation from the United States on the investigation, the discovery that had been previously produced, and the Younes' potential FCA liability. (Duffy Aff., ¶ 12). The Younes expressed a willingness to work towards a solution with the United States. (Duffy Aff., ¶ 12). However, the Younes required documents necessary to prepare for the depositions demanded in CID Nos. 25-689, 25-690, and 25-691 and evaluate a potential resolution for this matter. (Duffy Aff., ¶ 12). Without such documentation or a good faith meet and confer on the Younes' request, it was in the best interests of the Younes to assert their Fifth Amendment rights against self-incrimination for any interview or deposition. (Duffy Aff., ¶ 12). The Younes notified the United States of their intent to assert their Fifth Amendment rights for all questions at a deposition through the undersigned. (Duffy Aff., ¶ 12).

The United States denied the Younes' request for any further documentation and refused to accept the blanket assertion of the Younes' Fifth Amendment rights. (Duffy Aff., ¶ 13). Rather, the United States insisted the Younes appear for full in-person depositions in Omaha, Nebraska over three days and make any Fifth Amendment assertion specifically question-by-question. (Duffy Aff., ¶ 13). This demand would require the Younes to incur costs of travel and attorney fees and appear for several-hours long depositions despite the United States being fully aware of the Younes' intent to assert their rights under the Fifth Amendment. (Duffy Aff., ¶ 12).

Throughout July 2025, the Younes repeatedly proposed reasonable, good-faith alternatives to resolve the United States' demands without imposing additional unnecessary burden or expense on the Younes. First, the Younes offered voluntary interviews with the United States if further documents were provided to the Younes. (Duffy Aff., ¶ 14). The United States again denied the Younes' compromise to avoid further costs to the Younes. (Duffy Aff., ¶ 15). As another attempt to work with the United States, the Younes offered to appear for depositions but requested that all of the depositions would take place on the same day since the Younes intended to assert their Fifth Amendment right to each question at the deposition. (Duffy Aff., ¶ 16). Once again, the United States refused this resolution and insisted that the Younes appear for in-person depositions over multiple days to assert their Fifth Amendment right for every question. (Duffy Aff., ¶ 16, Exhibit G, pp. 6-8). The United States even sought to impose additional conditions on its demand for the testimony of the Younes by demanding that the Younes' depositions occur in a certain order. (Duffy Aff., ¶ 16, Exhibit G, pp. 5-8).

From July 29, 2025, to August 6, 2025, the Younes attempted to confer and clarify the continued demand for deposing the Younes in a certain chronological order across multiple days when the United States was aware that the Younes intended to assert their Fifth Amendment right

for every question. (Duffy Aff., ¶ 17). However, the United States' responses were notably evasive, addressing only portions of the questions while avoiding the substantive issues raised by the Younes. (Duffy Aff., ¶¶ 19 - 21). Such responses raised serious concerns regarding the United States' complying with their good faith obligations under the Nebraska Rules of Professional Conduct. (Duffy Aff., ¶ 20). Nonetheless, the parties finally reached an agreement for Paul Younes and Linda Younes to be deposed on September 4 and 5, and that Margaret Younes-Holz would be deposed at a date after September 5. (Duffy Aff., ¶ 19).

The United States then shifted its focus to the alleged deficiencies in the Younes' document production and responses to CID Nos. 24-121, 24-122, and 24-123. (Duffy Aff., ¶ 24). The parties held a meet and confer zoom conference on August 21, 2026. (Duffy Aff., ¶ 25). During this conference call, the undersigned notified the United States that the Younes were intending to rely on the advice of counsel defense based on the legal advice they received from their attorneys, Mr. Simpson and Mr. Forney. (Duffy Aff., ¶ 25). On September 2, 2025, the Younes provided written confirmation of their intent to assert the advice of counsel defense to the United States. (Duffy Aff., ¶ 27). In support of the advice of counsel defense, the Younes agreed to waive their attorney-client privilege and later provided written confirmation on the scope of the waiver. (Duffy Aff., ¶ 31).

On September 3, 2025, almost two weeks after being notified of the Younes' reliance on the advice of counsel defense, the United States decided to postpone the depositions of Paul and Linda Younes, which were scheduled to begin the next day. (Duffy Aff., ¶ 28).

On September 12, 2025, the United States was provided an extensive document production, over thousands of pages, from Ms. Oman and Mr. Simpson in support of the advice of counsel defense and to supplement the Younes' responses to CID Nos. 24-121, 24-122, and 24-123. (Duffy

Aff., ¶ 30). Additionally, the Younes proposed that they were willing to appear for limited-scope voluntary interviews related to the advice of counsel defense. (Duffy Aff., ¶ 31). In response, the United States agreed that they would be willing to confer about the format of the Younes' testimony following the deposition of Mr. Simpson. (Duffy Aff., ¶ 32).

On September 24, 2025, the United States conducted a voluntary interview of Ms. Oman. (Duffy Aff., ¶ 33). Mr. Simpson was scheduled to be deposed in early October, and the Younes' were holding October 20 and 21 to provide testimony to the United States. (Duffy Aff., ¶ 32). However, on October 9, 2025, the United States again requested to postpone the testimony of the Younes, and even Mr. Simpson, due to "a number of factors" but did not elaborate as to what those factors were. (Duffy Aff., ¶ 34). Nonetheless, the Younes still provided new potential dates for when they would be available to provide testimony following Mr. Simpson's deposition. (Duffy Aff., ¶¶ 37-38).

On November 20, 2025, the United States deposed Mr. Simpson pursuant to CID No. 25-942. (Duffy Aff., ¶ 40). Pursuant to CID No. 25-942, Mr. Simpson's deposition was to cover the following topics:

(1) Mr. Simpson's relationship with the Younes Entities and their owners and employees;

(2) The PPP loans and forgiveness received by any of the Younes Businesses;

(3) The eligibility of the Younes Businesses for PPP loans and forgiveness, including the past and current ownership of the Younes Businesses, the criminal history of Paul Younes and the Younes Businesses, and any transactions that purported to change the ownership of the Younes Businesses;

(4) The Younes Businesses' request(s) for legal advice regarding PPP loans and forgiveness;

(5) The steps taken by Mr. Simpson, including but not limited to legal research performed by Mr. Simpson or relied upon by Mr. Simpson, regarding the Younes Businesses' request(s) for legal advice; and

(6) The legal advice given by any lawyer to the Younes Businesses regarding PPP loans and forgiveness.

(*See* Duffy Aff., Exhibit Z). For this deposition, the undersigned and Ms. Dendy-Sanders, on behalf of the United States were present in person. (Duffy Aff., ¶ 40). However, Ms. Ammons, on behalf of the United States, was present via zoom, and Ms. Ammons primarily conducted the questioning of Mr. Simpson. (Duffy Aff., ¶ 40).

The Younes requested a transcript from Mr. Simpson's deposition, but the United States elected to withhold it and failed to show good cause for withholding it. (*See* Duffy Aff., ¶¶ 40, 48). Therefore, without such transcript, the Younes cannot state with certainty the exact testimony of Mr. Simpson; however, to the best of their knowledge and belief, Mr. Simpson provided testimony within the topics stated in CID No. 25-942 and such testimony was consistent with the information that had been previously presented to the United States.

The day after Mr. Simpson's deposition and without conferring with the Younes, the United States expressed it intended to have the Younes' testimony be sworn, transcribed testimony pursuant to CID Nos. 25-689, 25-690, and 25-691 – rather than the proposed limited-scope voluntary interviews. (Duffy Aff., ¶ 41). From November 21, 2025, to December 11, 2025, the Younes and the United States entered discussions regarding the format of the Younes' testimony and potential conclusion to the investigation. (Duffy Aff., ¶¶ 41-46). Pursuant to the United States' correspondence on December 2, 2025, the United States stated that, "The Government is not required offer CID recipients options with respect to the format of the testimony or explain why it

seeks sworn testimony as opposed to a voluntary interview." (Duffy Aff., Exhibit Q, pg. 2). Furthermore, within the United States' letter on December 11, 2025, the United States expressed that, "The fact that the Younes believe they have a valid defense to FCA liability is not a basis for refusing to comply with the CID. As to your clients' costs, the Government does not understand how preparing for testimony is significantly more costly than preparing for a voluntary interview, and regardless, the cost of preparing the three key witnesses in this case is not a valid basis for noncompliance to the CID." (Duffy Aff., Exhibit S, pg. 2). Notably, the Government failed to provide any authority to support such positions. (*See* Duffy Aff., Exhibits Q and S).

Overall, the parties' discussions from November 21, 2025, to December 11, 2025, proved unproductive because the United States refused to provide meaningful transparency regarding its evaluation of the advice of counsel defense, Mr. Simpson's testimony, or what additional information it believed was necessary to conclude the investigation or make an evaluation of the advice of counsel defense. (Duffy Aff., ¶¶ 41-46). The United States declined to close the investigation and maintained its position that it had no obligation to disclose its reasoning to the Younes and could continue to pursue open-ended, in-person depositions from the Younes. (Duffy Aff., ¶¶ 41-46).

On December 19, 2026, the Younes submitted supplemental sworn written responses to Interrogatory No. 6 set forth in CID No. 24-123, explaining the application process for the PPP loans and the legal assistance they received for such applications. (Duffy Aff., ¶ 47). Following this correspondence, the United States failed to provide any communication to the Younes until February 27, 2026, when the United States sent a letter stating that it was withholding the deposition transcript of Mr. Simpson pursuant to 31 U.S.C. § 3733(h)(6). (Duffy Aff., ¶ 48).

The United States continued to remain silent as to CID Nos. 25-689, 25-690, and 25-691 until June 2026. (Duffy Aff., ¶ 49). On June 2, 2026, the United States made an unexplained request to renew the meet and confer process regarding CID Nos. 25-689, 25-690, and 25-691 with an arbitrary deadline to the undersigned to respond to the United States' request. (Duffy Aff., Exhibit U, pg. 2). The Younes and the United States exchanged substantive email correspondence regarding asserted positions for the testimony of the Younes; however, for the same reasons as before, these communications were not successful. (Duffy Aff., ¶¶ 50-54, Exhibit V).

Accordingly, the parties held a meet and confer telephone conference on June 24, 2026, to discuss the testimony of the Younes, the scope of CID Nos. 25-689, 25-690, and 25-691, and the advice of counsel defense. (Duffy Aff., ¶ 55). The Younes requested the United States to take a position on the status of the Younes as it pertained to the investigation and to clarify whether: the United States accepts the advice of counsel defense and the Younes are merely witnesses in some other investigation of the lender, or the Younes continue to have potential liability. (Duffy Aff., ¶ 55). Additionally, in response to the United States' request for further information, the Younes presented less costly and burdensome alternatives to the depositions, including: (1) allow the Younes to answer supplemental interrogatories on the advice of counsel issue; (2) allow the Younes to be deposed by written question under Fed. R. Civ. P. 31 on the advice of counsel issue; or (3) allow the Younes to be deposed via videoconference on the issue of the advice of counsel defense. (Duffy Aff., ¶ 55).

Following this call, the United States offered to conduct the Younes' depositions in Kearney, Nebraska, but refused to limit the depositions to matters only relevant to the advice of counsel defense. (Duffy Aff., ¶ 56). On June 29, 2026, the Younes asked the United States to reconsider its demand for open-ended, in-person depositions in light of the substantial

documentation and testimony already provided. (Duffy Aff., ¶ 57). The United States still refused to state its position on the merits of the defense or identify what additional information, if any, it believed was necessary to evaluate it. (Duffy Aff., ¶ 57). The Younes again raised concerns that the United States was not meeting and conferring in good faith because it continued to avoid providing a clear explanation of its position, the scope of the requested testimony, or the information it claimed remained necessary. (Duffy Aff., ¶ 57). Therefore, the Younes asserted that the United States' obligation to meet and confer in good faith was not satisfied. (Duffy Aff., ¶ 57).

Despite the Younes' attempt to meet and confer with the United States, the United States moved forward by filing the Petition on July 1, 2026, and demand the Younes to attend unlimited, in-person depositions on the same topics that have been exhausted through this investigation. (Duffy Aff., ¶ 58; Filing No. 1).

On August 21, 2026, the United States deposed Mr. Forney pursuant to CID No. 25-943. (Duffy Aff., ¶ 59). Pursuant to CID No. 25-943, Mr. Forney's deposition was to cover the same topics as Mr. Simpson's deposition. (*See* Duffy Aff., Exhibit AA). Similar to Mr. Simpson's deposition, the Younes also requested a transcript from the deposition of Mr. Forney; however, the United States has withheld it as well. (*See* Duffy Aff., ¶ 59). Therefore, the Younes cannot state with certainty the exact testimony of Mr. Forney; however, to the best of their knowledge and belief, Mr. Forney provided testimony within the topics stated in CID No. 25-943 and such testimony was consistent with information that had been previously presented to the United States.

## III. LEGAL STANDARDS

### A. The Authorization of a CID under the False Claims Act.

The FCA prohibits an individual from knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval, or from knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)-(b). Pursuant to 31 U.S.C. § 3733(a)(1), the United States is authorized to issue a CID to an individual prior to filing a suit under the FCA. However, the United States may do so only when it has "reason to believe that any person may have possession, custody, or control of any documentary material or information relevant to a false claims law investigation." A CID may demand an individual to produce documentary materials, submit answers to interrogatories, or give oral testimony under oath. 31 U.S.C. § 3733(b)(1).

The scope of a CID is not unlimited. *Id.* A CID may not demand documents, answers to interrogatories, or oral testimony if the information sought is protected under:

(1) the standards applicable to subpoenas or subpoenas duces tecum issued by a court of the United States to aid in a grand jury investigation; or

(2) the **standards applicable to discovery requests under the Federal Rules of Civil Procedure**, to the extent that the application of such standards to any such demand is appropriate and consistent with the provisions and purposes of this section.

*Id.* (emphasis added). Accordingly, the scope of a CID under the FCA should be considered under the same standards for discovery pursuant to the Federal Rules of Civil Procedure. 31 U.S.C. § 3733(b)(1)(B).

**B. The Enforcement of a CID Pursuant to 31 U.S.C. § 3733 and the Federal Rules of Civil Procedure.**

If the United States pursues an enforcement proceeding of a CID, the Federal Rules of Civil Procedure shall apply to such proceedings, unless their application is inconsistent with the false claims CID statute. 31 U.S.C. § 3733(j)(6).

Fed. R. Civ. P. 45(d)(1) requires that a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Rule 45(d)(3)(A) sets out the mandatory grounds for quashing or modifying a subpoena. On timely motion, the court for the district where compliance is required *must* quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3).

Courts have held that a CID is enforced as an administrative subpoena. *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir. 1995) (holding a FCA CID is an administrative subpoena); *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1087 (D.C. Cir. 1992) (treating a Federal Trade Commission CID as an administrative subpoena), *cert. denied*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 654 (1993). Accordingly, courts have a limited role in enforcing an administrative subpoena. *See Markwood*, 48 F.3d at 979. A district court is tasked with "making decisions concerning whether the subpoena, and the enforcement process, are authorized by Congress, whether the information sought is relevant to the agency's investigation, and whether or not the investigation and enforcement of the subpoena is an abuse of the court's process." *Id.*; *see United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 817 (8th Cir. 2012) (applying the same standard to determine reasonable cause required to support an application

for enforcement of a subpoena duces tecum). "[A] district court is not a 'rubber stamp' for agency demands for the production of information." *Markwood*, 48 F.3d at 979.

To determine whether an administrative subpoena should be enforced, the Eighth Circuit has applied the following four-part framework: the subpoena must be (1) issued pursuant to lawful authority; (2) for a lawful purpose; (3) requesting information relevant to the lawful purpose; and (4) the information sought is not unreasonable. *Whispering Oaks*, 673 F.3d at 817 (citing *Fresenius Med. Care v. United States,* 526 F.3d 372, 375 (8th Cir.2008)). If the issuing agency has established these four elements, the burden shifts to the CID recipient to "show that judicial enforcement 'would amount to an abuse of the court's process.'" *Whispering Oaks*, 673 F.3d at 817 (quoting *EEOC v. Peat, Marwick, Mitchell & Co.,* 775 F.2d 928, 931 (8th Cir.1985)).

When a subpoena is challenged as unduly burdensome, courts in the Eighth Circuit apply a six-factor balancing test: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the discovery request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011). "When a nonparty is subpoenaed, the court is particularly mindful of Rule 45's undue burden and expense cautions." *Id.*; *see also Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs"). Courts have authority to modify the scope of a subpoena, shift the financial burdens onto the requesting party, or order compliance under specific conditions. *Precourt*, 280 F.R.D. at 467.

**C. The Advice of Counsel Defense under the FCA.**

"A person acts with reckless disregard – and thus 'knowingly' – under the FCA when he knows or has reason to know of facts that would lead a reasonable person to realize that harm [like a false claim] is the likely result of the relevant act." *United States ex rel. Hockaday v. Athens Orthopedic Clinic, P.A.*, 616 F. Supp. 3d 1339, 1354 (M.D. Ga. 2022) (internal quotations omitted). "Good faith reliance on counsel's advice, though, can negate the mens rea element." *Id.*

To assert the advice of counsel defense, the Eighth Circuit has stated that a defendant must show: (1) full disclosure of material facts to his counsel prior to seeking advice, and (2) good faith actual reliance on the advice in the belief that his conduct was legal. *United States v. Naushad*, 68 F.4th 380, 387 (8th Cir. 2023); *see also U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 381 (4th Cir. 2015) (holding the same in the context of a False Claims Act claim).

## IV. <u>ARGUMENT</u>

### A. This Court Should Deny the Petition Because the Information Sought in CID Nos. 25-689, 25-690, and 25-691 is Irrelevant, Unreasonable, and Exceeds the Scope Granted Under 31 U.S.C. § 3733.

The United States fails to sufficiently establish the information sought through CID Nos. 25-689, 25-690, and 25-691 is relevant, reasonable, and within the scope granted under 31 U.S.C. § 3733 at this stage of the investigation. (Filing No. 2, pgs. 11-12). The testimony topics stated in CID Nos. 25-689, 25-690, and 25-691 include: (1) The Younes' ownership and operation of the Younes' Businesses; (2) Paul Younes's guilty plea to a misdemeanor and probationary status; (3) the Younes' PPP applications; and (4) the Younes Businesses' eligibility for PPP loans (collectively, the "Younes' Deposition Topics"). (Duffy Aff., Exhibits W, X, and Y). However, the Younes' Deposition Topics are no longer within the scope granted under 31 U.S.C. § 3733 because the investigation has narrowed to the advice of counsel defense, so the Younes' Deposition Topics, taken in their entirety, are therefore, irrelevant and unreasonable.

A CID may not demand oral testimony if such testimony is protected under the standards applicable to discovery requests under the Federal Rules of Civil Procedure. 31 U.S.C. § 3733(b)(1)(B). Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery to include "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." That said, Courts must, upon motion or by its own, limit the scope and/ or the extent of discovery when:

(1) The discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
(2) The party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
(3) The proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). That said, "[a] court's discretion to limit the scope of discovery exists so long as it has a good reason to do so." *Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215, 218 (D. Neb. 2006).

The United States asserts the information sought in CID Nos. 25-689, 25-690, and 25-691 is relevant and reasonable based on broad and sweeping justifications. (*See* Filing No. 2, pgs. 11-12). However, the United States critically fails to acknowledge: (1) the extensive amount of information and evidence it has already obtained regarding the Younes' Deposition Topics; (2) the ample opportunity it has had to obtain the information covered in the Younes' Deposition Topics from the Younes and other participants in the investigation; and (3) the marginal benefit that in-person depositions of the Younes covering the Younes' Deposition Topics will add to the United States' investigation. (*See* Filing No. 2, pg. 11-12). These failures constitute good cause for the

Court to limit the scope and extent of the discovery of CID Nos. 25-689, 25-690, and 25-691. *See* Fed. R. Civ. P. 26(b)(2)(C).

**i. The information sought in CID Nos. 25-689, 25-690, and 25-691 is unreasonably cumulative and duplicative.**

The United States' demand for in-person depositions from the Younes covering the entirety of the Younes' Deposition Topics is unreasonably cumulative and duplicative at this point in the investigation. A court's obligation to limit the scope and/ or extent of discovery is triggered when the "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Furthermore, courts may refuse to enforce administrative subpoenas when the government is already in possession of the information sought. *See Markwood*, 48 F.3d at 980.

The information relevant to the Younes' Deposition Topics has already been obtained and extensively explored through other discovery tools and from other sources that were more convenient, less burdensome, and less expensive. Since 2024, the United States has obtained the following evidence related to Younes' ownership and operation of the Younes' Businesses, the Younes Businesses' PPP applications, and the Younes Businesses' eligibility for PPP loans:

(1) Younes Hospitality Inc.'s Answers to the United States' Interrogatries, in response to CID No. 24-123, dated March 1, 2024. (Duffy Aff., Exhibit D-3).

(2) Younes Hospitality Inc.'s Answers to the United States' Interrogatories in response to CID No. 24-123, dated April 5, 2024. (Duffy Aff., Exhibit D-1).

(3) Paul and Linda Younes' Answers to the United States' Interrogatories, in response to CID Nos. 24-121 and 24-122, dated May 14, 2024. (Duffy Aff., Exhibit D-2).

(4) Paul and Linda Younes' supplemental interrogatory responses to CID No. 24-123. (Duffy Aff., Exhibit T).

(5) The Younes' Responses to the United States' Request for Production of Documents. (Duffy Aff., Exhibit E).

(6) The documentation produced by Ms. Oman, which included approximately 4,300 pages of documents. (*See* Duffy Aff., ¶ 30, Exhibit K).

(7) The documentation produced by Mr. Simpson, which included approximately 1,300 pages of documents. (*See* Duffy Aff., ¶ 30, Exhibit K).

(8) The voluntary interview of Ms. Oman, on September 24, 2025. (Duffy Aff., ¶ 33).

(9) The deposition of Mr. Simpson, on November 20, 2025, pursuant to CID No. 25-942, regarding the Younes Businesses, the PPP loan applications, and the legal advice provided to the Younes. (Duffy Aff., ¶ 40, Exhibit Z).

(10) The deposition of Mr. Forney, on August 21, 2026, pursuant to CID No. 25-943, regarding the Younes Businesses, the PPP loan applications, and the legal advice provided to the Younes. (Duffy Aff., ¶ 40, Exhibit AA).

The United States has not meaningfully disclosed what information is needed from the Younes that goes beyond what has already been presented to the United States, specifically in the form of in-person deposition testimony. Despite the Younes' objections to continued expense and delay, the United States maintains that it can conduct unlimited, in-person depositions of the Younes over the same topics it has already obtained thousands of documents and sworn testimony on at the expense of the Younes and the taxpayers without meeting and conferring on the current status of their investigation.

The United States has already utilized less costly and burdensome discovery tools and could continue to implement such tools for any information it believes it still needs for the investigation, such as additional written interrogatories and requests for production of documents. Moreover, the Younes have repeatedly proposed less costly and burdensome avenues to obtain additional information, including supplemental interrogatories, limited-scope depositions by written questions under Fed. R. Civ. P. 31, and limited-scope depositions via videoconference. (Duffy Aff., ¶ 55). Therefore, it would be unreasonably cumulative and duplicative if the Younes were to be compelled to appear in-person for hours-long depositions regarding the entirety of the Younes' Deposition Topics, so the Court should limit the extent and scope of the Younes' Deposition Topics.

**ii. The United States has had ample opportunity to obtain the information sought in CID Nos. 25-689, 25-690, and 25-691.**

The Court may limit the scope of discovery when "a party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(ii). The United States has had more than enough time to obtain the information sought in the Younes' Deposition Topics. The events at issue in the investigation occurred approximately six years ago. Further, this investigation has been ongoing for approximately two years.

The United States has also had multiple opportunities to obtain the information sought in the Younes' Deposition Topics. The United States has heard testimony from Ms. Oman, Mr. Simpson, and Mr. Forney and collected a substantial number of documents regarding the Younes Businesses' PPP applications, eligibility for PPP loans, and ownership structure. The Younes have also repeatedly offered voluntary interviews, limited-scope depositions, and even unlimited-scope depositions. (*See* Duffy Aff., ¶¶ 14, 16, 19, 31, 36, and 55). Yet, the United States has repeatedly

chosen to delay the Younes' testimony. (*See* Duffy Aff., ¶¶ 28, 34, and 48-49). Moreover, the United States made no attempt to obtain information from the Younes regarding the Younes' Deposition Topics for six months, from December 2025 to June 2026. (*See* Duffy Aff., ¶¶ 48-49).Accordingly, because the United States has had ample opportunity to obtain the testimony and information it seeks, good cause exists for the Court to limit discovery, and the Court should not enforce CID Nos. 25-689, 25-690, and 25-691.

**iii. The information sought in CID Nos. 25-689, 25-690, and 25-69 is irrelevant and unreasonable because it falls outside the scope discovery pursuant to Federal Rule of Civil Procedure 26(b)(1).**

When the discovery sought falls outside the scope of discovery, pursuant to Federal Rule of Civil Procedure 26(b)(1), the Court must limit the scope of discovery. Fed. R. Civ. P. 26(b)(2)(C)(iii). As mentioned, the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To determine if the discovery sought falls within this scope, the following considerations apply: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Pro. 26(b)(1).

At this point, the United States' investigation has narrowed to the advice of counsel defense. Any information outside the scope of the advice of counsel defense is, therefore, irrelevant. Considering this, the United States has failed to meaningfully establish the benefit or intent of demanding the Younes to appear for in-person deposition across multiple days seeking information that has been exhausted these past two years. Even though the United States asserts there is no documentary evidence of the exact legal advice provided to the Younes, the United

States has heard sworn testimony from Mr. Simpson and Mr. Forney regarding the circumstances surrounding the legal advice provided to the Younes when applying for the PPP loans. (*See* Duffy Aff., ¶¶ 40, 59). Yet, the United States has failed to explain its position on the format the Younes' testimony, the advice of counsel defense, or the role of the Younes in the investigation. (*See* Duffy Aff., ¶¶ 12-58). Due to the lack of transparency from the United States, it is unclear why in-person, unlimited depositions of the Younes is material to the investigation considering all of the evidence the United States is in possession of.

Further, the United States fails to recognize the costs placed on the Younes to appear for three in-person, day-long depositions, which would require travel costs, attorney fees, and time to prepare for such depositions. The United States has been notified that the Younes intend to assert their Fifth Amendment rights against self-incrimination. Moreover, the Younes have repeatedly notified the United States of the significant costs associated with United States' demands. However, the United States has insisted that the Younes must assert such right question-by-question and in-person despite the Younes' efforts to meet and confer for less burdensome and costly alternatives. Further, the Younes offered to provide substantive interviews regarding the advice of counsel defense, which would understandably provide benefit to the United States' investigation. The United States denied this alternative and has continued to demand the Younes to sit for an-person deposition covering the Younes' Deposition Topics without any limitation. The burden and expense placed on the Younes to provide in-person oral testimony for all of the Younes' Deposition Topics clearly outweighs the benefits provided by these depositions – and are therefore, not proportional to the needs of the case. Thus, CID Nos. 25-689, 25-690, and 25-69 go beyond the scope permitted under Federal Rule of Civil Procedure 26(b)(1), and the information sought in CID Nos. 25-689, 25-690, and 25-691 is irrelevant and unreasonable.

The circumstances in this case trigger the Court's obligation to limit the scope of discovery in CID Nos. 25-689, 25-690, and 25-691 pursuant to Fed. R. Civ. P. 26(b)(2)(C) because the information sought is irrelevant to the advice of counsel defense, unreasonably cumulative and duplicative, is not proportional to the needs of the investigation, and the United States has had ample opportunity to obtain such information. Hence, the Court should deny the Petition and refuse to enforce CID Nos. 25-689, 25-690, and 25-691 because the United States seeks oral testimony that is irrelevant, protected under the Federal Rules of Civil Procedure, and is outside the scope permitted under 31 U.S.C. § 3733(b)(1)(B).

**B. The Court Should Deny the Petition Because Judicial Enforcement of CID Nos. 25-689, 25-690, and 25-691 Would Amount to an Abuse of the Court's Process.**

The Court's process is abused when a subpoena is "issued for an improper purpose, such as to harass the [respondent] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Whispering Oaks*, 673 F.3d at 819. Courts have stated this is a heavy burden to reach. *Inspector Gen. of U.S. Dep't of Agric. v. Griffin*, 972 F. Supp. 676 (M.D. Ga. 1997). However, as mentioned, Courts cannot serve as "a 'rubber stamp' for agency demands for the production of information." *Markwood*, 48 F.3d at 976.

The United States "cannot use its subpoena power to go on a fishing expedition." *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (citing *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994); *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973) ("The Government cannot go on a "fishing expedition" ... and where it appears that the purpose of the summons is "a rambling exploration" of a third party's files, it will not be enforced"). "Congress intended the false claims CID to provide the Department of Justice with a means to assess quickly, and at the least cost to the taxpayers or to the party from

whom information is requested, whether grounds exist for initiating a false claim suit under 31 U.S.C. §§ 3729–32, particularly in cases of possible procurement fraud." *Markwood*, 48 F.3d at 979.

The Younes have demonstrated a willingness to comply with the United States since the investigation began. However, the Younes' efforts to participate in this investigation with good faith has not been reciprocated by the United States. Specifically, the United States' failure to genuinely meet and confer with the Younes' counsel, it's insensitivity towards the costs and burden placed on the Younes for its continued pursuit of the Younes' testimony, and its failure to approach the investigation without unnecessary delay demonstrates a lack of good faith from the United States. Therefore, the United States' investigation, and now the Petition, has amounted to nothing more than a fishing expedition and rambling exploration, subjecting the Younes to undue burden.

**i. The United States has failed to meaningfully meet and confer with the Younes.**

The United States has acted without good faith by its failure to meaningfully meet and confer with the Younes' legal counsel regarding CID Nos. 25-689, 25-690, and 25-691. In the context of discovery, "good faith" has been defined as when "the parties [have made] a **genuine attempt** to resolve the discovery dispute without involving the court." *Jim Hawk Truck-Trailers of Sioux Falls, Inc. v. Crossroads Trailer Sales & Serv., Inc.*, No. 4:20-CV-04058-KES, 2023 WL 356121, at *3 (D.S.D. Jan. 23, 2023) (emphasis added). Furthermore, under Nebraska Rule of Professional Conduct § 3-508.4, it is considered professional misconduct for a lawyer to "engage in conduct involving dishonestly, deceit or misrepresentation."

The United States has not genuinely attempted to resolve the disputes related to CID Nos. 25-689, 25-690, and 25-691. On multiple occasions, the United States has failed to be transparent,

provide complete responses, and be forthcoming throughout the investigation despite the Younes' stated intentions to reach a solution or compromise. Rather, the United States has repeatedly asserted that it may act as it sees fit without offering any substantive explanation or even authority to support its position. (*See* Duffy Aff., ¶¶ 12-58).

Furthermore, the United States has consistently refused the Younes' reasonable compromises to comply with CID Nos. 25-689, 25-690, 25-691, such as additional written discovery, limited-scope written deposition questions, limited-scope voluntary interviews, or depositions via videoconference, without clear or substantive justification as to why those alternatives would not work. (*See* Duffy Aff., ¶¶ 12-58). Notably, the United States has not been able to provide a clear or reasonable explanation for why videoconference depositions of the Younes are insufficient, especially when the United States itself has conducted depositions of Mr. Simpson and Mr. Forney via videoconference. (*See* Duffy Aff., ¶¶ 40, 59).The United States' insistence that the Younes to bear the burden and expense of in-person depositions without explanation – despite the United States' own failure to appear in-person for depositions in this investigation – reflects a lack of good faith in the meet and confer process.

Lastly, the United States' attempt at a meet and confer in June 2026 did not satisfy the United States' good faith obligations. It is unreasonable for the United States to attempt assert it had satisfied its meet and confer obligations after providing the Younes' counsel an arbitrary one-week deadline to respond to a meet and confer request after six months of no contact from the United States. (Duffy Aff., ¶¶ 50-53). Furthermore, the United States did not reach out once during those six months to inform the Younes a Petition to Enforce was forthcoming – underscoring their lack of intent to meet and confer in good faith. Based on the last communications exchanged, the United States still failed to answer the Younes' questions or provide any explanations on its

position. (Duffy Aff., ¶ 57). Therefore, the United States' June 2026 attempt to meet and confer appeared to be undertaken merely to "check the box" for their obligations prior to filing the Petition, rather than as a good-faith effort to genuinely works towards a resolution without court action.

Many of the Younes' attempts to meet and confer with the United States proved unsuccessful due to the United States' unwillingness to be transparent and reasonable. Taken together, the United States' conduct clearly calls into question its good faith in this investigation of the Younes.

**ii. The United States has failed to acknowledge the costs and burden the investigation has placed on the Younes.**

The United States' continued pursuit of the Younes' testimony has forced the Younes to incur significant costs. The United States has expressed that, "the cost of preparing the three key witnesses in this case is not a valid basis for noncompliance to the CID." (Duffy Aff., Exhibit S, pg. 2). However, the United States has clearly overlooked Congress's intent of an FCA CID. Congress did not intend a recipient of a FCA CID to be burdened with significant costs in order to comply such CID. *Markwood*, 48 F.3d at 979.

By the United States proceeding with its pursuit to enforce CID Nos. 25-689, 25-690, and 25-691 without meaningfully conferring with the Younes' counsel, the United States has disregarded the significant costs and burden it has placed on the Younes. Over these past two years, the Younes have devoted substantial financial resources to their legal representation in this investigation to be able to respond to the United States' extensive requests. Furthermore, the Younes have devoted a significant amount of their time, energy, and company resources to cooperate with the United States' perpetual investigation. Most notably though**,** the Younes have

waived their attorney-client privilege with Mr. Simpson and Mr. Forney to assist the United States in the investigation. (Duffy Aff., ¶ 27). Despite the Younes' continued willingness to cooperate with the United States, the United States has continued to impose additional demands that further erode the Younes' resources, without acknowledging the considerable burden it has placed on the Younes for an extended period of time. The United States has been repeatedly notified the burden and expense this investigation has placed on the Younes. Therefore, the United States' failure to consider the Younes' less burdensome alternatives to provide their oral testimony and continue moving forward in its pursuit indicates that the United States is not approaching this investigation with good faith but rather as costly, fishing expeditions of the Younes.

**iii. The United States has failed to approach this investigation without unnecessary delay.**

Congress did not intend for the United States' investigation pursuant to a CID under the FCA to be drawn out as it has in this matter. *Markwood*, 48 F.3d at 979. Rather, Congress intended a CID pursuant to the FCA to serve as a tool to "**assess quickly**" – and at least cost to the taxpayers – whether grounds exist to bring suit under the FCA. *Id.* (emphasis added). The United States has delayed resolution of the matter relating to CID Nos. 25-689, 25-690, and 25-691.

First, the United States has repeatedly postponed the Younes' testimony. Specifically, on September 3, 2025, the United States delayed the deposition of the Younes the day before Paul Younes was scheduled to testify. (Duffy Aff., ¶ 28). The United States asserted that such delay was in response to the Younes' written assertion of the advice of counsel defense on September 2, 2025. (Duffy Aff., ¶ 28). However, the United States was aware of such defense approximately two weeks prior when the Younes' counsel notified the United States during a meet and confer meeting. (Duffy Aff., ¶ 25). Subsequently, the Younes' were scheduled to provide testimony in October

2025; however, the United States again decided to postpone the Younes' testimony. (Duffy Aff., ¶ 34). The United States stated that it needed to postpone "due to a number of factors" but failed to clarify why such testimony needed to be postponed. (Duffy Aff., ¶ 34).

Moreover, the United States allowed its investigation related to the Younes to be essentially dormant for six months, from December 2025 to June 2026. (Duffy Aff., ¶¶ 48-49). The United States failed to provide any reason for this apparent pause in the investigation and its request to renew its pursuit of the Younes' testimony in June 2026.

Additionally, the Younes have requested that the United States close the investigation based on the substantial evidence the United States has obtained. (Duffy Aff., ¶¶ 44-57). However, the United States has refused to do so while failing to identify what information is necessary to conclude it. (Duffy Aff., ¶¶ 44-57). Without any clear endpoint, the investigation and the burden on the Younes could continue indefinitely. Accordingly, the United States' unwillingness to work with Younes has caused considerable and unnecessary delay to the investigation demonstrating a lack of good faith from the United States.

For the reasons mentioned, the United States' continued pursuit in its investigation and demand for the oral testimony of the Younes demonstrates that it is not conducting this investigation in good faith. Rather, the United States appears to be pursuing a speculative, costly, and open-ended investigation into the Younes, which clearly contradicts Congress's intent for a CID under the FCA. *See Markwood*, 48 F.3d at 979.Therefore, judicial enforcement of CID Nos. 25-689, 25-690, and 25-691 would amount to an abuse of the Court's process.

## V. <u>CONCLUSION</u>

For the reasons stated herein, the Court should dismiss and deny Plaintiff's Petition for Summary Enforcement of Civil Investigative Demands 25-689, 25-690, and 25-691 and quash CID Nos. 25-689, 25-690, and 25-691.

In the alternative, the Younes respectfully request the Court to limit and modify CID Nos. 25-689, 25-690, and 25-691 in the following manner:

(1) The United States should serve the Younes with written discovery limited to the advice of counsel defense to Younes;

(2) The United States should conduct depositions of the Younes via videoconference limited to questions regarding the advice of counsel defense; or

(3) The United States should conduct in-person depositions of the Younes in Kearney, Nebraska limited to questions regarding the advice of counsel defense.

DATED this 31st day of August, 2026.

PAUL YOUNES, LINDA YOUNES, and
MARGARITA YOUNES-HOLZ,
Defendants.

By: *<u>/s/ Michael B. Duffy</u>*

Michael B. Duffy, NE #27529
Heidi V. Mickelson, NE #28223
Isabella M. Washka, NE #28545
FRASER STRYKER PC LLO
1501 Mike Fahey Street, Suite 400
Omaha, NE 68102
(402) 341-6000 (telephone)
(402) 341-8290 (facsimile)
mduffy@fraserstryker.com
hmickelson@fraserstryker.com
iwashka@fraserstryker.com
ATTORNEYS FOR DEFENDANTS

**REQUEST FOR ORAL ARGUMENT PURSUANT TO NECIVR 7.1(E)**

Pursuant to NECivR 7.1(e), Defendants Paul Younes, Linda Younes, and Margarita Younes-Holz request oral argument on this Opposition to Petition to Enforce. An oral argument is particularly appropriate here given the importance of issues at stake, including the determination of Defendants' advice of counsel defense and the related waiver of attorney-client privilege, as well as the burden to be suffered by Defendants if the CIDs were enforced as written. The disputed factual and legal issues cannot adequately be resolved without benefit of oral argument.

Defendants respectfully request 30 minutes for said hearing.

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that, pursuant to NECivR 7.1(d)(1), this brief contains 8,891 words including all text, captions, headings, footnotes, and quotations according to the word count function of Microsoft Word 365.

*/s/ Michael B. Duffy*
Michael B. Duffy, NE #27529

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of August, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record:

United States Attorney's Office
District of Nebraska, Civil Division
Shereece Dendy-Sanders
Paige Ammons
1620 Dodge Street, Suite 1400
Omaha, NE 68102
Shereece.Dendy-Sanders@usdoj.gov
Paige.Ammons@usdoj.gov

*/s/ Michael B. Duffy*
Michael B. Duffy, NE #27529

3604225